

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

**FILED**

MAR 2 6 2014

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| MARK WANDERING MEDICINE, HUGH CLUB FOOT, LENARD ELK SHOULDER, CHARLES BEAR COMES OUT, WINFIELD RUSSELL, JAMES DAY CHILD, WOODROW BRIEN, SARAH STRAY CALF, MARTY OTHER BULL, NEWLYN LITTLE OWL, DONOVAN ARCHAMBAULT, ED MOORE, PATTY QUISNO, MICHAEL D. FOX, FRANK JEFFERSON and PHYLLIS POND CULBERTSON, | CV 12–135–BLG–DWM |

ORDER

Plaintiffs,

vs.

LINDA MCCULLOCH in her official capacity as Montana Secretary of State, GERALDINE CUSTER, in her official capacity of Rosebud County Clerk and Recorder, Rosebud County, ROBERT E. LEE, DOUGLAS D. MARTENS, and DANIEL M. SIOUX, in their official capacity as members of the County Board of Commissioners for Rosebud County, Montana, SANDRA L. BOARDMAN, in her official capacity of Blaine County Clerk and Recorder, Blaine County, CHARLIE KULBECK, M. DELORES PLUMMAGE and FRANK DEPRIEST in their official capacity as members of the County Board of Commissioners for Blaine, County, Montana, DULCE BEAR

DON'T WALK, in her official capacity of
Big Horn County Election Administrator,
Big Horn County, SIDNEY
FITZPATRICK, JR., CHAD FENNER,
JOHN PRETTY ON TOP, in their official
capacity as members of the County Board
of Commissioners for Big Horn County,
Montana and KIMBERLY YARLOTT, in
her official capacity of Big Horn County
Clerk and Recorder, Big Horn County,

                    Defendants.

Plaintiffs are Native Americans from Montana's Fort Belknap, Crow, and

Northern Cheyenne Indian Reservations.  They ask this Court to order Defendants

to open satellite county offices with in-person absentee voting and late voter

registration in Fort Belknap, Crow Agency, and Lame Deer, Montana.  Their

October 10, 2012 Complaint alleges claims under § 2 of the Voting Rights Act, the

Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution, and Article II, § 13 of the Montana Constitution.  (Doc. 1.)  Named

as Defendants are Montana's Secretary of State ("the Secretary") and county

officials from the three Montana counties involved ("County Defendants").

## PROCEDURAL BACKGROUND

Twenty-seven days before the 2012 general election, Plaintiffs moved for a

mandatory preliminary injunction directing Defendants to immediately open the requested satellite offices. (Doc. 3.) On October 30, 2012, after a day and half of testimony, the motion was denied. (Doc. 79.) Plaintiffs appealed that decision to the Ninth Circuit, which ultimately denied Plaintiffs' motion as moot. *Wandering Medicine v. McCulloch*, Slip Copy No. 12-35926 (9th Cir. October 30, 2013).

Defendants have moved to dismiss Plaintiffs' Complaint for lack of standing and failure to state a claim. Plaintiffs oppose these motions and have moved to strike four affidavits. The Secretary's motion to dismiss (Doc. 36) is denied, County Defendants' motions to dismiss (Doc. 51 and 73) are granted in part and denied in part, and Plaintiffs' motion to strike (Doc. 108) is denied.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for a motion to dismiss based on lack of subject-matter jurisdiction. Under this provision, a claim can be challenged both facially and substantively. *See Arbarugh v. Y & H Corp.*, 546 U.S. 500 (2006). A facial challenge contests the adequacy of the allegations of the complaint, whereas a substantive challenge contests the factual merits of the asserted federal jurisdiction. *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

2004).  The plaintiff has the burden to establish that subject-matter jurisdiction is proper.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  In that event, the suit should be dismissed under Rule 12(b)(1)."  *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citations omitted).  Under the "case or controversy" requirement, it is the plaintiff's burden to show three elements: (1) a concrete injury-in-fact; (2) a causal connection between the injury and defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61.

## II.    Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Id.* at 663.

4

ANALYSIS

## I.   STANDING

### A.   Plaintiffs have standing to bring claims against County Defendants.

County Defendants contend Plaintiffs lack standing as they have not made a

showing of any injury-in-fact, insisting each Individual Plaintiff is free to vote on

Election Day and has a number of options by which to exercise this right, such as:

voting at polling places on election day, mailing in absentee ballots, voting in-

person at their respective county courthouses, or obtaining an absentee ballot via a

third person. (Doc. 52 at 8.)  County Defendants also contend Plaintiffs have

exercised these alternatives. (Docs. 104, 105, 106.)  However, County Defendants

provide too limited a characterization of when an injury has been alleged.

To establish injury-in-fact, Plaintiffs must show "an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal

quotations marks and citations omitted).  "At the pleading stage, general factual

allegations of injury resulting from the defendant's conduct may suffice, for on a

motion to dismiss [a court] presum[es] that general allegations embrace those

specific facts that are necessary to support the claim." *Id.* at 561.  However, the

5

Supreme Court has repeatedly refused "to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743, 745 (1995) (finding the plaintiffs did not have standing as they did not reside within the district which was the subject of redistricting). Even if a governmental actor is discriminating on the basis of race, the resulting injury "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct[.]" *Allen v. Wright*, 468 U.S. 737, 755 (1984).

Here, Plaintiffs have alleged residence in the counties and reservations at issue and that their right to participate in the political process through voting has been hindered by the Defendants' refusal to establish satellite offices. The Supreme Court has made it clear that the location and accessibility of polling places has a direct effect on a person's ability to exercise his franchise. *Perkins v. Matthews*, 400 U.S. 379, 387 (1971). Although the *Perkins* case arose in the context of § 5 of the Voting Rights Act, the Court held that the use of polling places at locations remote from African-American communities, or at places calculated to intimidate African-Americans from entering (when alternatives were available), was a practice or procedure violating the Voting Rights Act. *Id.* Plaintiffs' alleged injury is similar. Plaintiffs allege they are Native Americans

6

and that the locations at which they can currently engage in in-person absentee voting and late voter registration are remote from their communities and they have perceived prejudice when visiting these locations. These allegations are sufficient to sustain their burden of showing injury-in-fact. *Compare with Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 363 (E.D. Va. 2009) (holding the plaintiff lacked standing as she failed to allege that she was a member of a minority group and that her right to vote had been abridged on account of her race or color).

However, County Defendants are correct in their criticism of the standing of three Individual Plaintiffs. Although Plaintiffs state that Phyllis Culbertson and Lenard Elk Shoulder may fall under the category of people that would benefit from late registration at a satellite location, they fail to demonstrate that these two individuals are registered voters or would engage in late registration if given the chance. *See Hays*, 515 U.S. at 746; *see also Warth v. Seldin*, 422 U.S. 490, 505-506 (1975) (finding plaintiffs lacked standing because they could not demonstrate that if the Court removed the obstacles at issue, they would actually take the desired action); *Perry-Bey*, 678 F. Supp. 2d at 363 (finding the plaintiff lacked standing as the Complaint failed to allege she was a registered voter in the City of Norfolk). As discussed above, Plaintiffs have the burden of affirmatively demonstrating standing. *Lujan*, 504 U.S. 560. Therefore, Individual Plaintiffs

Culbertson and Elk Shoulder lack standing.[1]  Individual Plaintiff Frank Jefferson

similarly lacks standing under the redressability requirement because the county

seat of Hardin would still be closer to his home than the closest proposed satellite

office in Crow Agency.  *See Lujan*, 504 U.S. at 561.

The remaining Plaintiffs, however, have sufficiently alleged standing.

Although every individual does not have the right to the exact means and

convenience in voting as he or she may desire, *Jacksonville Coalition for Voter*

*Protection v, Hood*, 351 F. Supp. 2d 1326 (M.D. Fl. 2004), Plaintiffs have pled

injury based on the locations of polling places and their inability to access them.

Whether such an injury rises to the level of a violation of Federal or Constitutional

law is to be decided on the merits.

**B.**    **The remaining Plaintiffs also have standing to bring claims**
         **against the Secretary.**

**1.**    **Plaintiffs have demonstrated a sufficient causal connection.**

The Secretary first contends Plaintiffs lack standing as they cannot show she

was involved in the deprivation of their civil rights.  For there to be a causal

connection between the injury and the conduct complained of, the injury has to be

---

[1]    Plaintiffs have failed to respond to County Defendants' contention
that Culbertson is not registered in Blaine County as alleged in the Complaint.
Absent this fact or any facts demonstrating her intent to engage in late registration,
her standing has therefore not been affirmatively shown.

8

"fairly . . . trace[able] to the challenged action of the defendant, and not . . . [t]he result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted).

Applying this rule to the case at hand, Plaintiffs present a persuasive argument for causation. As discussed above, the injury in the present case is the alleged diminished ability to participate in the political process due to the lack of satellite offices in the requested locales. Although the Complaint does not expressly indicate what actions of the Secretary are in question, three are implicated: (1) the Secretary's initial denial of the request for the establishment of a similar office in Browning, (Compl., Doc. 1 at ¶ 121), (2) the later issuance of an advisory opinion which states that the establishment of such offices is "optional" (*Id.* at ¶ 126), and (3) the failure to issue a directive ordering such offices be established. Considered together, (2) and (3) give rise to a causal connection.[2]

On August 28, 2012, the Secretary "issued an Election Advisory stating the proper procedures and considerations a County should make in offering a satellite early voting location." (*Id.* at ¶ 126.) The purported reason for this Advisory was

---

[2]      The failure to establish a satellite office in Browning is not fairly traceable to the injury alleged here as it involved the Secretary's interactions with the residents of the Blackfeet Reservation, none of which are plaintiffs in the present case. However, as discussed later, this incident implicates what authority the Secretary believed she had in this area.

9

to "provide uniformity in the election process pursuant to Mont. Code Ann. §§ 13-1-201 and 13-1-202(c)." (*Id.*) This advisory was then sent to all county election administrators in Montana, explaining the procedures for opening these "optional" satellite offices. (*Id.*) The Secretary had, and has, the ability to issue a directive telling the counties that they *must* establish satellite voting offices for in-person absentee voting and late voter registration. *See* Mont. Code Ann. § 13-1-202. If a directive had been issued, it would have been binding on election administrators and they would have had to take the directed action. Based on this alone, the injury as alleged can be fairly traced back to the Secretary's decision to issue a permissive advisory and not to issue a directive requiring that such offices be established. This causal connection is further supported by the Complaint's allegations that such offices have been established in other counties across the State, (Doc. 1 at ¶¶ 117-18.), implicating the Secretary's responsibility to obtain and maintain uniformity in the application and operation of election laws.

The Secretary further contends Plaintiffs fail to demonstrate she personally participated in the alleged violations. Liability under 42 U.S.C. § 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The August 28, 2012 Advisory Opinion is on the Secretary's

letterhead and is an official advisory of her office.   (*See* Doc. 54-5.)  Furthermore,

it is the Secretary's responsibility to maintain uniformity in the application of

election laws.  Therefore, her personal participation has been sufficiently alleged.

### 2.      Plaintiffs can show redressability.

The Secretary contends Plaintiffs have failed to allege any likelihood that a

judgment against the Secretary would redress their alleged injury.  It must be

"likely" rather than merely "speculative" that the injury will be "redressed by a

favorable decision." *Lujan*, 504 U.S. at 561.  In their Prayer for Relief, Plaintiffs

ask the Court to order Defendants to establish satellite office locations that allow

in-person absentee voting and late registration.  (Compl., Doc. 1 at 39-40.)  If this

Court determines satellite offices must be opened in the requested areas, it would

fall on the counties, not the Secretary, to fulfill that judgment.  However, the

Secretary's role in this relief is arguably two-fold.

Firstly, the Secretary has the power under Montana law to issue directives to

election administrators, which would require compliance with a requested action.

*See* Mont. Code Ann. § 13-1-202.  Secondly, the Secretary has the "responsibility

to obtain and maintain uniformity in the application, operation, and interpretation

of election laws . . . ." § 13-1-201.  If Plaintiffs are correct that the failure to

establish such offices violates the law, the Secretary has duty to ensure the law is

11

complied with and that such compliance is uniform across Montana.  Based on the

foregoing, the Secretary's motion to dismiss based on standing is denied.

## II.    RULE 12(B)(6)[3]

### A.    Plaintiffs state a plausible claim under § 2 of the Voting Rights Act.

Section 2 of the Voting Rights Act "was designed as a means of eradicating

voting practices that minimize or cancel out the voting strength and political

effectiveness of minority groups[.]" *Reno v. Bossier Parish Sch. Bd.*, 520 U.S.

471, 479 (1997) (internal quotations omitted).  As such, the Supreme Court

instructs that the Voting Rights Act "should be interpreted in a manner that

provides the broadest possible scope in combating racial discrimination." *Chisom

v. Roemer*, 501 U.S. 380, 403 (1991) (internal quotations omitted).  Significantly,

---

[3]        Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all material that is pertinent to the motion."  Here, the Secretary has attached three exhibits to the reply regarding her motion to dismiss. (Docs. 65-1, 65-2 and 65-3.)  Although Plaintiffs had included their own affidavits with their responsive briefing, the Court finds the parties are in no position to present all material pertinent to a motion for summary judgment.  As such, it is appropriate to disregard these attachments and treat the Secretary's motion as one for dismissal.  However, the Court may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice [] without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

in 1982, Congress amended § 2 to clarify that a plaintiff may establish a violation by a showing of discriminatory results alone.  42 U.S.C. § 1973; *see Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986).  "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by [different races of] voters to elect their preferred representatives." *Gingles*, 478 U.S. at 47.

A violation of § 2 is established "if, based on totality of the circumstances, it is shown that the political processes leading to nomination or election . . . are not equally open to participation by members of a protected class, in that its members have less opportunity than other members of the electorate [1] to participate in the political process and [2] to elect representatives of their choice." *Gonzalez v. Ariz.*, 677 F.3d 383, 405 (9th Cir. 2012).  Although § 2 does not require proof of discriminatory intent, "proof of [a] causal connection between the challenged voting practice and a prohibited discriminatory result is crucial[.]" *Id.* (internal quotation marks and citation omitted).  Said otherwise, a § 2 challenge "based purely on a showing of some relevant statistical disparity between minorities and whites, without any evidence that the challenged voting qualification causes that disparity, will be rejected." *Id.* (internal quotation marks and citation omitted).

The Senate Judiciary Committee Majority Report accompanying the bill that

amended § 2 elaborates on circumstances that may be probative of a § 2 violation.

*Gingles*, 478 U.S. at 36-37.  The following factors may be relevant in the present

case:

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;

> ****

> [2]. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;

> ****

> [3]. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

> ****

> [4]. the extent to which members of the minority group have been elected to public office in the jurisdiction.

> Additional factors that in some cases have had probative value as part of plaintiffs' evidence to establish a violation are:

> whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.

> whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Id.* "[T]here is no requirement that any particular number of factors be proved, or that a majority of them point one way or the other." *Id.* at 45.

Plaintiffs insist the failure to establish satellite offices will result in Indian citizens having less opportunity than non-Indian citizens to participate in the political process and elect candidates of their choice for Federal, State, and County offices. (Compl., Doc. 1 at ¶ 5.) Plaintiffs relied largely—and mistakenly—on *Farrakhan v. Gregoire*, 590 F.3d 989 (9th Cir. 2010) in making their initial argument under the Voting Rights Act. The Ninth Circuit has ruled the case has no precedential value.[4] However, the totality of the circumstances test outlined in *Gonzalez* remains valid law and can be applied to the present case.

Judge Cebull considered the above-mentioned factors in his order denying Plaintiffs' motion for a preliminary injunction, finding historical discrimination prevented Native American participation in the democratic process and that poverty, unemployment, and limited access to vehicles render it difficult for

---

[4] Plaintiffs recognized this misstatement of the law and filed notice to that effect. (Doc. 92.) In the Notice, Plaintiffs re-brief their argument under the Voting Rights Act, indicating how the Senate Factors are weighed under a totality of circumstances test.

residents of the three reservations to travel to the county seats to register late and

cast in-person absentee ballots. (Doc. 79 at 9-11; *see also* Compl, Doc. 1 at ¶¶ 93-

115, 144.) However, as argued by County Defendants, to demonstrate a violation

of § 2, Plaintiff must also show causation and that Plaintiffs have less opportunity

to elect representatives of their choice.

Accepting the facts pleaded in the Complaint as true, Plaintiffs have made a

claim for relief under the Voting Rights Act that is plausible on its face. In

*Gonzalez*, the Ninth Circuit found that because there was no proof of a causal

relationship between the election practice and the alleged discriminatory impact,

the plaintiff's claim under § 2 failed. 677 F.3d at 406. The court noted "that not a

single expert testified to a causal connection between Proposition 200's

requirements and the observed difference in the voting rates of Latinos, and that

[the plaintiff] had failed to explain how Proposition 200's requirements interact

with the social and historical climate of discrimination to impact Latino voting in

Arizona." *Id.*

Here, unlike the situation in *Gonzalez*, Plaintiffs allege a causal relationship

between a failure to establish satellite offices and a discriminatory impact on

Native Americans. In support of this allegation, Plaintiffs provide absentee voting

data (Compl., Doc. 1 at ¶¶ 57-68), comparative residence rates of Native

16

Americans and non-Native Americans in the areas at issue (*id.* at ¶¶ 57-92), and

the significant driving distances in these areas (*id.* at ¶ 119).  Plaintiffs also allege

Native Americans prefer to submit ballots in person, travel is a hardship, and

Plaintiffs perceive discrimination when traveling to their respective county seats.

(*Id.* at ¶¶ 143-45); *see Perkins*, 400 U.S. at 387 ("[T]here inheres in the

determination of the location of polling places an obvious potential for denying or

abridging the right to vote on account of race or color.").   Accepting these facts as

true, a § 2 violation could be found.

In a previous order, Judge Cebull thoroughly discussed Plaintiffs' ability to

elect representatives, finding Plaintiffs would be unlikely to succeed on their

Voting Rights Act claim on these grounds.  (*See* Doc. 79.)  However, "the election

of a few minority candidates is not dispositive[]" of a plaintiff's ability to elect

representatives.  *Windy Boy v. Big Horn Co.*, 647 F. Supp. 1002, 1018-20 (D.

Mont. 1986) (determining that the success of a number of Native American

candidates and arguable influence over the Democratic party was insufficient to

overcome the findings of racial polarized voting and discrimination against

Indians).  As a number of the Senate factors weigh in Plaintiffs' favor, dismissal at

this stage would be inappropriate.

Based on the foregoing, County Defendants' motion to dismiss as it relates

to Plaintiffs claims under § 2 of the Voting Rights Act is denied.

**B.      Plaintiffs state a plausible Equal Protection claim.**

The right to vote is regarded as a fundamental right protected under equal

protection. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). "No right is more

precious in a free country than that of having a voice in the election of those who

make the laws under which, as good citizens, we must live. Other rights, even the

most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*,

376 U.S. 1, 17 (1964). "[T]he right of suffrage can be denied by a debasement or

dilution of the weight of a citizen's vote just as effectively as by wholly

prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105

(2000) (quoting *Reynolds*, 377 U.S. at 555).

Unlike § 2 of the Voting Rights Act, discriminatory intent is an essential

element of Equal Protection claims alleging discrimination against voters. *Rogers*

*v. Lodge*, 458 U.S. 613, 617-19 (1982). If a law is neutral on its face but has a

discriminatory impact or effect from the administration of the law, the required

discriminatory intent need not be proved by direct evidence but may be "inferred

from the totality of the relevant facts, including the fact, if it is true, that the law

bears more heavily on one race than another." *Id.* at 618. "Thus determining the

existence of a discriminatory purpose demands a sensitive inquiry into such

circumstantial and direct evidence of intent as may be available." *Id.*(internal

quotation marks omitted); *see Perry-Bey*, 678 F. Supp. 2d at 367-68 (dismissing

the plaintiff's Equal Protection claim because although she alleged a denial of an

equal opportunity to vote, she never alleged the defendants intended to

discriminate against minority voters).

Here, Plaintiffs contend "the policy of denying satellite office locations was

adopted for a discriminatory purpose." (Doc. 1 at ¶ 4.) The Complaint provides

facts supporting this contention, including: a detailed description of past

discrimination, (*id.* at ¶¶ 93-115), allegations of a denial of voting rights and

dilution of voting power (*id.* at ¶¶ 3-4), and the allegation that similar satellite

offices have been established in other counties without large minority populations

(*id.* at ¶¶ 117-18). The Complaint also describes, however, a number of non-

discriminatory justifications provided by the election administrators.[5] Even with

---

[5]     The Complaint alleges that the Fort Belknap tribe's request was
denied due to "security, staffing, and cost" and the request to Rosebud County was
denied due to concerns regarding staff, the complexity of establishing such an
office, and concerns over fraud. (Doc. 1 at ¶¶ 129, 137, 139, 141.) Similar
requests were allegedly denied in Big Horn County due to time constraints and
concerns over space. (*Id.* at ¶ 135.) County Clerk and Recorder for Rosebud
County Custer offered the alternative of bussing people to Forsyth to vote and
offered to open an office in Lame Deer where residents could apply for an
absentee ballot and scan or fax the request to the Clerk's main office in Forsyth.
(*Id.* at ¶¶ 139, 140.)

these justifications, Plaintiffs present a plausible claim for discriminatory intent and that the law, as alleged, bears more heavily on Indians than other races. The potential for such a claim is bolstered by the allegation that Rosebud County, one of the counties in question, has established these types of offices before, (*id.* at ¶ 118), but has refused to do so in the present instance. Accordingly, County Defendants' motion to dismiss as it relates to Plaintiffs' claims under the Equal Protection Clause is denied.

**C.** **Plaintiffs fail to state a claim under the Montana Constitution.**

Plaintiffs also bring a claim under the Montana Constitution, Article II, § 13, which states: "[a]ll elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Here, the Complaint fails to allege how this constitutional provision has been violated. Rather, it merely recites the Constitutional language and the language used under Plaintiffs' Equal Protection claim. (Doc. 1 at ¶¶ 157, 160.) The violation, as currently plead, is merely a legal conclusion, which this Court need not accept as true. *See Ashcroft*, 556 U.S. 662. Therefore, County Defendants' motion to dismiss as to Plaintiffs' claim under the Montana Constitution is granted.

**D.** **Plaintiffs state a plausible claim for relief against the Secretary.**

20

The Secretary insists Plaintiffs have failed to state a claim upon which relief can be granted because the Secretary can neither open nor prevent the opening of satellite offices. According to the Secretary, her duties are limited to issuing directives, instructions, sample forms and advisory opinions. § 13-1-202.

These duties, however, are intricately intertwined with the application and operation of election laws in Montana. Although the Secretary's Advisory Opinion in August 2012 provided that counties may, if they so choose, establish satellite offices for in-person absentee voting (Doc. 54-5), her earlier statement denying the establishment of such an office in Browning, (Compl., Doc. 1 at ¶ 121), indicates the Secretary, at least at one point in time, acted as though she had the capacity to definitively determine whether such offices would be established. Accepting the facts in the Complaint as true, Plaintiffs state a plausible claim for relief against the Secretary.

## III.   PLAINTIFF'S MOTION TO STRIKE

Plaintiffs raise objections to statements in three affidavits indicating that Plaintiffs voted at their respective polling places or via absentee ballot in the November 6, 2012 election or did not vote. (*See* Affs., Docs. 104, 105, and 106.) Plaintiffs object on the grounds that the affiants lack personal knowledge (Fed. R. Evid. 602) and that the statements are hearsay (Fed. R. Evid. 801, 802, and 805).

Rule 602 of the Federal Rules of Evidence provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." However, even "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nev. Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (internal quotation marks and citation omitted). In *Greene*, the Ninth Circuit found the district court did not abuse its discretion by admitting the affidavits of Nevada Department of Corrections officials. *Id.* at 1018-19. The court found that

> [a]lthough Greene and Browning argue that the affidavits contain hearsay, their argument is directed more at the affiants' lack of foundation. They presume that each . . . affiant lacks personal knowledge and, as a result, necessarily relied on the statements of another to make their declarations. Unfounded speculation as to the affiant's alleg ed lack of personal knowledge of the events of his affidavit does not render it inadmissible.

*Id.* at 1019. The situation here is similar.

Here, Plaintiffs contend that the affidavits of Custer, Bear Don't Walk, and Boardman lack foundation and personal knowledge. (*See* Doc. 108-1 at 3, 4.) However, County Defendants state that each of the affiants has access to the "Montana Votes" system using their "C Numbers," which would give each of them access to individual files to see if a ballot was issued and if a ballot was

accepted.  (Doc. 110 at 3.)  Plaintiffs' argument that this may not have been how this information was gathered and that these statements are hearsay is unfounded speculation and does not render it inadmissible.

Therefore, Plaintiffs' motion to strike (Doc. 108) is denied.

## CONCLUSION

Based on the foregoing, the Secretary's motion to dismiss (Doc. 36) is DENIED.  County Defendants' motion to dismiss for lack of standing (Doc. 51) is GRANTED as to Individual Plaintiffs Culbertson, Elk Shoulder, and Jefferson, but DENIED in all other respects.  County Defendants' motion to dismiss in lieu of answer (Doc. 73) is GRANTED as to Plaintiffs' claim under the Montana Constitution, but DENIED as to Plaintiffs' claims under § 2 of the Voting Rights Act and the Fourteenth Amendment Equal Protection Clause.  Finally, Plaintiffs' motion to strike the affidavits of Bear Don't Walk, Boardman, and Custer (Doc. 108) is DENIED.

Dated this _____ day of March, 2014.


_____
Donald W. Molloy, District Judge
United States District Court